2003 OK 68

**Jane A. MERRITT, Appellee,**

v.

**Michael L. MERRITT, Appellant.**

No. 95,742.

Supreme Court of Oklahoma.

July 1, 2003.

---

Charles Gaunce, Norman, OK, for appellant.

Silas C. Wolf, Jr., Norman, OK, for appellee.

WINCHESTER, J.

¶ 1 The appellant, Michael L. Merritt, filed an application for an indirect contempt citation and a motion to reduce arrearage to judgment. The appellee, Jane A. Merritt, filed a motion to dismiss the contempt citation based on the payment of Social Security benefits to the child of the parties. The Social Security payment made subsequent to the commencement of this action exceeded the amount of the arrearage. After finding that the payment purged the contempt, the trial court granted the appellee's motion to dismiss. The appellant filed a "motion to reconsider," which the trial court denied. The appellant filed an appeal that was subsequently assigned to the Court of Civil Appeals, Division III. That court reversed and remanded. The appellee filed a petition for

certiorari, which this Court granted. We vacate the opinion of the Court of Civil Appeals and affirm the judgment of the trial court.

## FACTS

¶2 The record reveals that the parties were granted a divorce on October 16, 1987. The trial court subsequently modified the custody provisions for the son of the parties on April 27, 1989, and on December 28, 1994. On the latter date, the court modified the decree by granting sole custody of the minor child to the appellant (the father). The trial court ordered, pursuant to the Oklahoma Child Support Guidelines, that the appellee (the mother) pay $120.00 per month.

¶3 In 1996, the court further modified the custody provisions by terminating the parental rights of the mother. The father asserts that the action to terminate parental rights was the result of the mother's failure to support their child for over a year. The mother's pleadings assert that the 1996 judgment was obtained by default. The father alleges in his application for an indirect contempt citation that the order for the payment of child support remained in full force and effect. The application alleges that the mother failed to make payments beginning in March 1996, and missed all but two months until he filed his application for contempt on January 31, 2000. He claimed that the mother was indebted to him in the amount of $5,400.00 for child support, plus interest on that amount. The father filed his application one day before the parties' son attained majority.

¶4 The trial court heard the mother's motion to dismiss on November 1, 2000. The court found that the mother had failed to pay the court-ordered child support as alleged by the father. The court further found that the mother had been legally disabled since May 1997, and that the Social Security Administration made a payment of $13,101.00 directly to the child of the parties on June 2, 2000, and had paid $355.00 per month directly to the child of the parties every month since that time. Those payments represented Social Security benefits payable to the child as a result of the mother's disability. The sums were in excess of the sum claimed as delinquent child support by the father in his application for an indirect contempt citation.

¶5 The court made these findings. Equity required the application of the equitable estoppel doctrine to the father's claim for delinquent child support. The mother's disability, and the Social Security benefit payments of a lump sum and monthly payment made in excess of the delinquent child support supported this decision. The mother was not responsible for the payment of the lump sum directly to the adult child of the parties by the Social Security Administration. The journal entry of judgment stated that the father should seek reimbursement of the child support he sought in his motion from his adult son by having a constructive trust imposed on the benefits paid to the adult son to the extent of the unpaid child support while the child was a minor.[1] The court granted the motion to dismiss the indirect contempt citation and also dismissed the father's motion to reduce arrearage to judgment.

¶6 The Court of Civil Appeals, Division III, cited the 1998 supplement to 43 O.S. § 137, which provides that when an installment of court-ordered child support becomes past due, it becomes a judgment by operation of law. The court concluded that it was inequitable to allow Social Security disability payments on behalf of the mother to the child to extinguish the father's *in personam* judgment for child support.

## I. STANDARD OF REVIEW

¶7 The trial court stated that its judgment was based on equitable considerations. We have recently reaffirmed that child support proceedings are of equitable cognizance. *Hedges v. Hedges*, 2002 OK 92, ¶10, 66 P.3d 364, 370. In *Thrash v. Thrash*, 1991 OK 32, ¶9, 809 P.2d 665, 668, we noted that equitable defenses may be invoked to

---

1. We express no opinion on this *obiter dictum* of the trial court. Although the parties have argued whether or not such a trust may be imposed, this issue is not properly before this Court and does not affect the reasoning in this opinion.

bar the recovery of delinquent child support payments. Those defenses include the equitable doctrines of waiver, estoppel and laches. *Thrash,* 1991 OK 32, ¶ 9, 809 P.2d at 668. When reviewing the decision of the trial court in an equity proceeding, this Court has long held that the judgment will not be disturbed unless the trial court abused its discretion or unless the court's finding was clearly contrary to the weight of the evidence. *Creech v. Creech,* 1956 OK 10, ¶ 9, 292 P.2d 376, 378; *Tschauner v. Tschauner,* 1952 OK 230, ¶¶ 22, 25, 245 P.2d 448, 451.

## II. EQUITABLE JURISDICTION

¶ 8 The trial court based its decision on principles of equity. In 1987, the legislature enacted a new law, codified in the Oklahoma Statutes as § 1291 of Title 12, now 43 O.S. 2001, § 137. Section 137(A) provides that "Any payment or installment of child support ordered pursuant to any order, judgment, or decree of the district court or administrative order of the Department of Human Services is, on and after the date it becomes past due, a judgment by operation of law." Except for the rearranging of some commas, the sentence is identical to that which was originally enacted. The Court of Civil Appeals has construed this statute as eliminating equitable defenses to excuse noncompliance with a support order. *Aguero v. Aguero,* 1999 OK CIV APP 38, ¶ 10, 976 P.2d 1088, 1090. *Cowan v. Cowan,* 2001 OK CIV APP 14, ¶ 10, 19 P.3d 322, 325–326, relied on *Aguero* to reach the same result.

¶ 9 In his Response of Michael L. Merritt to Motion to Dismiss Contempt Citation, the appellant argues that he has a series of judgments for unpaid child·support as a result of the appellee's failure to make her required child support payments. Appellant cites 43 O.S.2001, § 137, which uses the term "judgment by operation of law." The term "judgment by operation of law" appears to be incorporated into Oklahoma's statutes as a result of a requirement by Congress.[2]

¶ 10 A money judgment is discharged by actual payment in full to a person authorized to receive it. *Hart v. Jett Enterprises, Inc.,* 1985 OK 24, ¶ 6, 744 P.2d 561, 562. Due process requires that an obligor be allowed a hearing for any legally-cognizable defense to an assertion of arrearage. The Supreme Court of Alaska recognized this in *State v. Maxwell,* 6 P.3d 733 (Alaska 2000). That court observed that an alleged obligor be allowed an opportunity for a fair and impartial hearing before finalizing and implementing a continuing child support order that would become a series of enforceable judgments. *Maxwell,* 6 P.3d at 737.

¶ 11 North Dakota likewise recognized this right to a hearing in *Ruscheinsky v. Ulrich,* 2000 ND 133, ¶ 10, 612 N.W.2d 283, 286. There the court noted that simply because obligor's arrearages constituted judgments by operation of law did not necessarily mean that North Dakota's Social Services could collect on the judgments. Pursuant to North Dakota statutes, the claims were subject to a statute of limitations or cancellation by N.D.C.C. § 28–20–35.

¶ 12 Like support alimony, child support becomes vested at the time each payment becomes due. *Nantz v. Nantz,* 1988 OK 9, ¶ 10, 749 P.2d 1137, 1140. "[A]n action which seeks to recover unpaid installments for child support is an action for a debt created by law and evidenced of record, and is maintainable in the court which directed payment, or any other court of competent jurisdiction...." *Turk v. Coryell,* 1966 OK 194, ¶ 10, 419 P.2d 555, 558.

**2.** 42 U.S.C. § 654(20)(A) provides that *"... to the extent required by section 666 of this title, that the State (A) shall have in effect all of the laws to improve child support enforcement effectiveness which are referred to in that section...."* Section 666(a) provides that *"... each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary...."* Section 666(a)(9)(A) provides: *"Procedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2), is (on and after the date it is due)—*

*(A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced...."*

¶ 13 Even though the arrearages are judgments by operation of law, they are nevertheless subject to equitable defenses. We have already stated that Oklahoma recognizes equitable defenses. *Hedges,* 2002 OK 92, ¶ 10, 66 P.3d at 370. "[T]he equitable jurisdiction of a district court is not dependent upon specific statutory authorization." *Marley v. Cannon,* 1980 OK 147, ¶ 8, 618 P.2d 401, 404. "The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility." *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 855 (Colo.1992). Therefore, the trial court's exercise of equitable jurisdiction requires an inquiry into the particular circumstances of the case. *Garrett,* 826 P.2d at 855. There is a legal maxim that equity must follow the law; it will not allow legal limitations to be abridged unless there are equitable considerations of a compelling nature. *Hedges,* 2002 OK 92, ¶ 8, 66 P.3d 364, 370. Equity will follow both the letter and the spirit of the law.

¶ 14 Pursuant to the standard of review, we must examine the record to determine if the trial court abused its discretion or if its findings were clearly contrary to the weight of evidence. In concluding that equitable estoppel applied, the trial court specifically considered the mother's disability, the fact that Social Security paid an amount in excess of the arrearage, and that the mother was not responsible for Social Security's decision to pay the adult son.

¶ 15 Equitable estoppel is employed to prevent one party from taking a legal position inconsistent with an earlier action that places the other party at a disadvantage. *First State Bank v. Diamond Plastics Corp.,* 1995 OK 21, ¶ 39, 891 P.2d 1262, 1272. Equitable estoppel holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who has in good faith, relied upon that representation or position. *Oxley v. General Atlantic Resources, Inc.,* 1997 OK 46, ¶ 20, 936 P.2d 943, 947. In the case at bar, the representation or position assumed must be the amount of time the father delayed before filing for his application for an indirect contempt citation and motion to reduce arrearage to judgment.

¶ 16 Both estoppel and the equitable defense of laches share the elements of delay and resulting prejudice to the other party. In *Hedges,* cited above, this Court found that a ten-year delay was not sufficient to support a laches defense where the only prejudice that could be shown was the fact that the party owing the arrearage must now pay the accrued interest along with the arrearage. *Hedges,* 2002 OK 92, ¶ 11, 66 P.3d at 370. In the case at bar, the mother is alleged to have failed to pay child support for three years and nine months. Concerning resulting prejudice from a delay in enforcement, the mother could claim to be prejudiced by the fact that the father's delay resulted in the Social Security Administration's paying the parties' adult child instead of paying the father. But she cannot claim that her failure to pay child support was in good faith. Also, there is no evidence that the father has taken now a legal position inconsistent with his earlier action. The evidence is insufficient to support the conclusion of the trial court that equitable estoppel applies.

¶ 17 But to affirm the decision of the trial court, it is not necessary for this Court to agree with the reason for the decision. "It is a settled rule of appellate review in this jurisdiction that a judgment, if correct, must stand, regardless of the correctness of the reasons, theory or conclusions upon which it was based." *McDaniel v. McCauley,* 1962 OK 72, ¶ 10, 371 P.2d 486, 489, quoting *Duncan v. Golden,* 1957 OK 194, ¶ 6, 316 P.2d 1116, 1118.

¶ 18 The judgment of the trial court is based on an assumption that Social Security disability benefits may be credited for court-ordered support of a minor child. That assumption is correct. The foundation for crediting disability benefits for a minor child as child support payments was laid in *Nibs v. Nibs,* 1981 OK 25, 625 P.2d 1256. The Court found that the trial court in *Nibs* was within its discretion to credit Social Security payments against a child support obligation, although the Court held that the evi-

dence in *Nibs* weighed against such a credit. *Nibs*, 1981 OK 25, ¶ 10, 625 P.2d at 1257. The entire *Nibs* court agreed that credit for Social Security disability benefits toward a child support order should be allowed. *Nibs*, 1981 OK 25, ¶ 1, 625 P.2d at 1258 (dissent). "Social Security benefits are not gratuitous, but are earned, and they constitute, in effect, insurance payments substituting for lost earning power. [Citations omitted.] It is therefore equitable to substitute Social Security disability benefits for child support for the period during which such benefits are paid." *Nibs*, 1981 OK 25, ¶ 1, 625 P.2d at 1258 (dissent).

¶ 19 In the case before us, Social Security benefits have been paid for child support. The amount paid was in excess of that owed as an arrearage. The mother is entitled to credit for that payment. The trial court found that the mother was not responsible for the lump sum payment directly to the adult child of the parties. In balancing the equities, we will not require a disabled party on Social Security to pay a second time. *McNeal v. Robinson*, 1981 OK 43, ¶ 13, 628 P.2d 358, 360. We do not find an abuse of discretion in the decision of the trial court.

### III. ATTORNEY FEES

¶ 20 The trial court granted the mother's motion for attorney fees, and awarded the mother $1,175.00. The father appeals from that award. *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925, 934–935, reiterated the rule, established by 43 O.S.2001, § 110(C), that either spouse may be required to pay the reasonable expenses of the other in the prosecution or defense of the action. The trial court must take into account what is just and equitable considering the respective parties and the means and property of each. Attorney fees are granted only to that litigant who qualifies for the benefit through the process of a judicial balancing of the equities. The court's decision will not be disturbed on appeal in the ab-

sence of an abuse of discretion. *Hester v. Hester*, 1983 OK 50, ¶ 7, 663 P.2d 727, 729. We do not find an abuse of discretion in the trial court's decision.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.**

WATT, C.J., LAVENDER, KAUGER, SUMMERS, WINCHESTER, JJ., concur.

HARGRAVE, J., concurs in result.

OPALA, V.C.J., HODGES (who joins OPALA), BOUDREAU, JJ., concur in part; dissent in part.

OPALA, V.C.J., dissenting in part.

I *concur* in affirming the trial court's order that exonerates Mother of liability for child support arrearage; I *dissent* from leaving undisturbed the trial court's order that imposes on Father the liability for payment of Mother's counsel-fee services. I would let each party bear its own expenses for legal representation in the case.

BOUDREAU, J., concurring in part; dissenting in part:

¶ 1 I agree with the majority opinion to the extent it allows the mother an equitable credit against her child support obligation, in the amount of social security disability payments which the Social Security Administration paid directly to the child as a consequence of the mother's disability.[1] The majority opinion need not have gone farther than that. Instead, the majority opinion proceeds to make a hyper-global pronouncement by way of *obiter dicta* that child support judgments are subject to the equitable defenses of waiver, estoppel and laches.

¶ 2 In *Hedges v. Hedges*, 2002 OK 92, 66 P.3d 364, our most recent decision concerning the availability of equitable defenses to child support judgments, we restrained from making a pronouncement about the availabili-

---

1. This is consistent with the holding of *McNeal v. Robinson*, 1981 OK 43, 628 P.2d 358. In *McNeal*, we held that the non-custodial father should receive an equitable credit for his alterna-

tive compliance with the child support order. He received credit for the payments made by him during the time his children lived with him.

ty of equitable defenses to child support judgments because no such pronouncement was necessary to the holding. *See also Myers v. Lashley,* 2002 OK 14, ¶ 17, 44 P.3d 553, 561 (not making global pronouncements). In exercising this restraint in *Hedges,* we said: "We need not *globally* address ourselves today to the *continued invocability* of laches as an equitable defense in arrearage enforcement proceedings. This is so because, on this record, we hold that it does not avail in this case." *Hedges,* 66 P.3d at 369 (emphasis in original). Contrary to what we did in *Hedges,* the majority opinion in this case makes an across-the-board pronouncement on an issue that was neither necessary to the holding nor clearly framed by the parties.

¶ 3 If the holding of the majority opinion in this case is indeed that child support judgments are subject to the equitable defenses of waiver, laches and estoppel, then I dissent. In 1987 the Legislature enacted a statute that says a child support obligation becomes a judgment by operation of law on the date it becomes past due. 43 O.S.2001 § 137(A).[2] The result of that statute was to transform an order in equity for the payment of continuing child support into a judgment by operation of law as each installment falls due and remains unpaid. *Hedges,* 66 P.3d at 373 n. 41. When § 137(A) is viewed in connection with subsequent enactments, I am convinced that the Legislature intended to eliminate the equitable defenses of waiver, laches and estoppel to the enforcement of child support judgments.

## WAIVER

¶ 4 It need hardly be repeated that 43 O.S.2001 § 112 eliminated the equitable doctrine of waiver as a defense to the enforcement of child support judgments. In *Hedges* we recognized that with the enactment of § 112, parents have statutory authority to mutually agree to relinquish payment of all or a portion of past due child support. Noting that the effect of § 112 was to eliminate the equitable defense of waiver in this context, we said: "[T]he latter defense characterized by the parties and by the trial court as 'waiver' is [now] statutorily declared ... its effectiveness stands *limited to matured and unpaid installments* either reduced or relinquished by mutual agreement." *Hedges,* 66 P.3d at 369 (emphasis in original). Waiver as a defense to child support judgments is now restricted to the terms of § 112(A)(3).

## LACHES

¶ 5 We have held that laches is an affirmative defense to *stale* claims not yet barred by limitations. *Hedges,* 66 P.3d at 369; *Sooner Federal Sav. & Loan Ass'n. v. Smoot,* 1995 OK 31, 894 P.2d 1082. Laches is defined as delay that disadvantages another. *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.), *cert. denied,* 522 U.S. 914, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997). In 1996 the Legislature enacted new laws concerning delay in asserting child support claims. The new statutes provide, among other things:

> *A child support judgment is not subject to a statute of limitations:*
>
> > Court-ordered child support is ... not subject to a statute of limitations. 12 O.S.2001 § 95(9).[3]
>
> *A child support judgment never becomes dormant:*
>
> > A child support judgment shall not become dormant for any purpose, except that it shall cease to be a lien on real property five (5) years from the date it is filed.... 43 O.S.2001 § 137(B).[4]
>
> *A child support judgment is enforceable until paid in full:*

2. This provision became effective October 1, 1987, codified at 12 O.S. § 1291(A). Laws 1987, c. 230, § 16. In 1989, 12 O.S. § 1291 was renumbered to 43 O.S. § 137. Laws 1989, c. 333 § 1. Section 137 was amended again in 1994, 1996, 1998 and 2000, but none of the amendments altered § 137(A).

3. This provision became effective September 1, 1996. Laws 1996, c. 233 § 1. Section 95 was amended again in 2002, but the amendment did not alter § 95(9).

4. This provision became effective November 1, 1996 and was codified at 43 O.S. § 137(C). Laws 1996, c. 233 § 3. Section 137 was amended again in 1998 and 2000. Neither the 1998 nor the 2000 amendment altered the quoted language, but the 1998 amendment renumbered § 137(C) to § 137(B). Laws 1998, c. 323 § 12.

Except as otherwise provided by court order, a judgment for past due child support shall be enforceable until paid in full. 43 O.S.2001 § 137(B)(1).[5]

*A child support judgment is owed until it is paid:*

Court-ordered child support is owed until it is paid.... 12 O.S.2001 § 95(9).[6]

¶ 6 Because these statutes are in derogation of common law, they must be liberally construed to effect their purpose. *Finnell v. JEBCO Seismic,* 2003 OK 35, ¶ 15, 67 P.3d 339, 345; *see also* 25 O.S.2001 § 29.[7] The purpose of these statutes is to ensure that delay on the part of the obligee in seeking to enforce child support obligations does not in any way affect his or her entitlement to those obligations. Construing these statutes liberally to effect their purpose, I am convinced the Legislature, in enacting these various statutes, intended to eliminate the equitable defense of laches to the enforcement of child support judgments.

## ESTOPPEL

¶ 7 Equitable estoppel holds a person to a representation made, or a position taken, where otherwise inequitable consequences would result to another who in good faith relied upon the representation or position. *Oxley v. General Atlantic Resources, Inc.,* 1997 OK 46, 936 P.2d 943, 947. Estoppel and waiver are closely akin and their legal effect is much the same. *Grant v. Norris,* 249 Iowa 236, 85 N.W.2d 261 (Iowa 1957); *First National Bank of Hastings v. Davis,* 123 Neb. 304, 242 N.W. 655 (1932); *Woodmen of the World Life Ins. Soc. v. Greathouse,* 242 Ala. 529, 7 So.2d 89 (1942). Although there are well recognized distinctions between the two doctrines, both are based on acts, conduct or declarations of the party against whom the defenses are asserted. In my

view, 43 O.S.2001 § 112, which prohibits (with a single exception) waiver of "payment of all or a portion of the past due amount [of child support]" applies to all acts, conduct or declarations relating to child support obligations, whether denominated waiver or estoppel. I am convinced the Legislature, in enacting this statute, intended to eliminate the equitable defense of estoppel to the enforcement of child support judgments.

## THRASH v. THRASH

¶ 8 The majority opinion relies on *Thrash v. Thrash,* 1991 OK 32, 809 P.2d 665, for the across-the-board proposition that equitable defenses may be invoked against the enforcement of child support judgments. In *Thrash,* the parties' divorce decree provided that father was to pay $220 per month child support until his gross salary reached $1,500, at which time he was to pay child support in an amount equal to 15% of his gross salary. In 1987, mother filed an application for contempt citation alleging that father was in arrears for child support in the amount of $31,876.80, based upon his income tax returns for the years through 1986. The trial court found father not guilty of indirect civil contempt, but entered judgment against father for the arrearage. On appeal, father argued that since mother made no attempt to enforce the automatic increases in child support based on his gross salary from the time the parties were divorced until 1987, the equitable doctrines of waiver, laches and estoppel barred mother's recovery of the arrearage. We disagreed, saying: "No set of facts has been stated for this Court to conclude that the appellant may in this case defeat the claim for the arrearage by interposing equitable defenses." *Thrash,* 809 P.2d at 668. In reaching this decision, we made a gratuitous comment regarding the availability of equitable defenses. We said:

5. This provision became effective November 1, 1996 and was codified at 43 O.S. § 137(C)(1). 1996 Laws c. 233 § 3. Section 137 was amended again in 1998 and 2000. Neither the 1998 nor the 2000 amendment altered the quoted language, but the 1998 amendment renumbered § 137(C)(1) to § 137(B)(1).

6. This provision became effective September 1, 1996. Laws 1996, c. 233 § 1. Section 95 was

amended again in 2002, but the amendment did not alter § 95(9).

7. "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice." 25 O.S. 2001 § 29.

"The appellant is correct in concluding that equitable defenses may be invoked to bar the recovery of delinquent child support payments." *Id.* This comment was certainly not essential to our holding in the case and is mere *obiter dicta.*

¶ 9 More importantly, *Thrash* was decided in 1991, and was based on pre 1987 child support arrearages. Thus, it was decided *before* 43 O.S. § 137(A) transformed an order in equity for the payment of continuing child support into a judgment by operation of law as each installment falls due and remains unpaid, and *before* the Legislature made child support judgments enforceable until paid in full, with no statute of limitations and no dormancy.

### CONCLUSION

¶ 10 I agree with the majority opinion to the extent it allows the mother an equitable credit against her child support obligation, in the amount of social security disability payments which the Social Security Administration paid directly to the child as a consequence of the mother's disability. However, I dissent to that portion of the opinion that holds that the equitable defenses of waiver, estoppel and laches are available as defenses to the enforcement of child support judgments because the pronouncement was not necessary to the holding and because I think it is wrong.

¶ 11 If this Court is going to declare that these equitable defenses may be invoked as defenses to the enforcement of child support judgments, we should do it in a case in which such declaration is essential to the holding of the case, and our opinion should include a reasoned discussion of all relevant statutory enactments subsequent to 1986.