OSCN Found Document:BOATMAN v. BOATMAN

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BOATMAN v. BOATMAN
2017 OK 27
Case Number: 113197; (Companion w/113857)
Decided: 04/04/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 27, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

NICK DOW BOATMAN, Petitioner/Appellee,
v.
JENNIFER ERIN BOATMAN, now WALLS, Respondent/Appellant.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III
APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY

Honorable David Smith, Trial Judge

¶0 Appellant, Jennifer Boatman, now Walls (Mother), and Appellee, Nick Boatman (Father), divorced in 2007, and shared joint custody of their minor child. In 2013, Mother filed a Notice of Intent to relocate with the child, and Father objected. The trial court denied Mother's application to relocate, concluding that the proposed relocation was not made in good faith and not in the best interest of the child. It also ordered each party to pay their own attorney fees. Mother appealed both judgments in separate companion cases, and both were affirmed by the Court of Civil Appeals. We hold that before a joint custodian can invoke the relocation provisions, the court must determine a primary physical custodian. We also hold that the trial court did not err in directing that each party pay their own fees.

COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART AND
REMANDED WITH INSTRUCTIONS.

James R. Gotwals, Mary L. Gutierrez, Benjamin D. Aycock, Tulsa, Oklahoma, for Appellant.
Bradley A. Grundy, Angela L. Smoot, Tulsa, Oklahoma, And
Julie Henson, Owasso, Oklahoma, for Appellee.

KAUGER, J.:

¶1 The dispositive question presented is whether the Appellant, a joint custodian but not the primary physical custodian of the parties' minor child, can invoke the statutory relocation provisions. We hold that she cannot. We remand the cause for the trial court to hold a hearing within 30 days of the date that this opinion is filed to determine the primary physical custodian of the parties' minor child.

¶2 In a separate companion case,[1] also decided here, the Appellant appeals the trial court's denial of attorney fees. We hold that the trial court did not err in directing each party to pay their own fees.

FACTS

¶3 Appellant Jennifer Boatman, now Walls (Mother), and Appellee Nick Boatman (Father) married in 2004. They have a single child, a daughter, born in 2005. The parties divorced in 2007, and equally shared time with their daughter under a joint custody plan.[2] The Joint Child Custody Plan provides that "[b]oth parties shall have equal rights and responsibilities to the minor child, and neither parties' rights shall be superior." Neither party was named as the primary physical custodian, and no court order dictates which household represents the child's primary residence. Mother and Father have both since remarried, and each has had another child. In 2013, Mother's job as Director of Franchise Training at a national restaurant chain in Tulsa, Oklahoma, was eliminated, and she was offered an executive position with the chain in Atlanta, Georgia. The new position included an annual salary increase of $25,000, and an additional $17,250 in discretionary annual bonuses.

¶4 Mother announced her intent to relocate to Georgia, and Father filed an objection to relocation on September 29, 2013, as contrary to the child's best interest.[3] A hearing on the merits was held over a two-day period in June 2014, and the trial court denied Mother's application to relocate. It concluded that the proposed relocation was not made in good faith and that it was not in the best interest of the child. It also ordered each party to pay their own fees and costs. Mother subsequently applied for an award of attorney's fees, which the trial court denied. Mother appealed the denial of the application to relocate and the denial of attorney's fees in separate companion cases, and the Court of Civil Appeals affirmed both decisions.

I.

A JOINT CUSTODIAN WHO IS THE NOT THE PRIMARY
PHYSICAL CUSTODIAN CANNOT INVOKE THE STATUTORY
RELOCATION PROVISIONS.

¶5 The custodial parent has a right to change his or her residence which can be limited by a court if the court finds that the relocation would prejudice the rights or welfare of the child.[4] This right has been recognized in Oklahoma since the statutory guarantee came to us from the Dakota Territory in 1887.[5] Title 43 O.S. 2011 §112.3(G)(1) provides:

The person entitled to custody of a child may relocate the principal residence of a child after providing notice as provided by this section unless a parent entitled to notice files a proceeding seeking a temporary or permanent order to prevent the relocation within thirty (30) days after receipt of the notice. (Emphasis supplied).

The divisions of the Court of Civil Appeals have issued conflicting decisions regarding the ability of a joint custodian to relocate. Compare In re Marriage of King, 2016 OK CIV APP 31, ¶ 11, 371 P.3d 1139 (holding that "when a court orders joint custody, 43 O.S. 2011 § 112.3 permits either parent to initiate the relocation procedure unless the order provides otherwise") with Caber v. Dahle, 2012 OK CIV APP 19, ¶ 30, 272 P.3d 733 (holding that "a person with joint custody of a child or temporary custody is not a person entitled to 'the' custody of the child within the meaning of the relocation statute").

¶6 We hold that a joint custodian who is not the primary physical custodian cannot invoke the relocation statute. The use of the phrase "the person" in 43 O.S. 2011 §112.3(G)(1) indicates that a single individual has the ability relocate the principal residence of a child. If this subsection applied to joint custodians in situations where neither parent was the primary physical custodian, then the provision would have referred to "a person entitled to custody" or another similar phrase. Our other cases applying this provision have involved either a sole custodian[6] or a joint custodian with primary physical custody.[7] Consequently, before a joint custodian can invoke the relocation provisions, the court must make a determination regarding who is the primary physical custodian.

¶7 In the present case, Mother did not have primary physical custody. As such, she was not "the person entitled to custody" who had statutory authority to relocate the minor child. This conclusion is supported by another, related provision. Title 43 O.S. 2011 §112.3(B)(1) provides:

Except as otherwise provided by this section, a person who has the right to establish the principal residence of the child shall notify every other person entitled to visitation with the child of a proposed relocation of the child's principal residence as required by this section. (Emphasis supplied).

And 43 O.S. 2011 §112.3(A)(4) defines the "principal residence of a child" as:

a. the location designated by a court to be the primary residence of the child,

b. in the absence of a court order, the location at which the parties have expressly agreed that the child will primarily reside, or

c. in the absence of a court order or an express agreement, the location, if any, at which the child, preceding the time involved, lived with the child's parents, a parent, or a person acting as parent for at least six (6) consecutive months . . .

Because the primary residence was not designated in any court order, and because the child resided equally with both Mother and Father, neither had the right to establish the principal residence of the child. Accordingly, Mother could not unilaterally invoke the relocation provisions. We therefore remand the cause for the trial court to hold a hearing within 30 days of the date that this opinion is filed to modify the joint custody plan and appoint a primary physical custodian of the parties' minor child. Appointment of a primary physical custodian under the joint custody plan is necessary in light of the obvious change of circumstances due to Mother's relocation. After a joint custody plan has been issued, the trial court may modify or terminate joint custody if it determines that the plan is not in the best interests of the child.[8] Once this conclusion is reached, the trial court can proceed to determine whether relocation is proper.

¶8 And to determine whether relocation is proper, the trial court should employ a two-step process.[9] Title 43 O.S. 2011 §112.3(K) provides that:

The relocating person has the burden of proof that the proposed relocation is made in good faith. If that burden of proof is met, the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child.

First, the parent seeking relocation has the burden of demonstrating that the proposed relocation was made in good faith.[10] If successful, then the burden shifts, and the parent objecting to relocation must show that the proposed relocation is not in the child's best interest.[11] If the parent seeking relocation is unsuccessful in demonstrating good faith, then the burden of demonstrating that relocation is in the child's best interest remains with him or her.[12]

¶9 The trial court concluded that the proposed relocation was not made in good faith and that it was not in the best interest of the child, seemingly allocating the burden of proof to Mother on both issues. However, once a custodial parent makes a showing that his or her proposed relocation was made in good faith, the burden shifts to the objecting party to demonstrate that the move was not in the child's best interest.[13]

¶10 Because our lower courts have continued to misconstrue what amounts to "good faith" in the context of a custodial parent's relocation, we take this opportunity to address the issue. "Good faith" is "an honest intention to abstain from taking any unconscientious advantage of another."[14] For example, the record in this case reveals that Mother's motivation for relocating was due entirely to her employment situation, and this was a situation that she did not create or cause. The company at which she had been employed for seventeen years eliminated her job. She was left with the options of being promoted to an executive position with a sizeable and significant salary increase, or potentially being forced to leave the company. The Director of Operations testified at trial that Mother could have possibly taken a demotion, although there were no other positions then available, and the Chief Human Resources Officer submitted an affidavit stating "[t]hat if Jennifer [Mother] had not accepted the new position, she could not have continued to work for the company."

¶11 Nothing indicates that Mother wanted to take advantage of Father, and this Court has already decided that "employment opportunities" and "financial considerations" are "legitimate reasons to support relocation."[15] In Scocos v. Scocos, 2016 OK 36, ¶ 7, 369 P.3d 1068, this Court overturned a trial court's decision that a mother's proposed relocation was not in good faith. There, the mother was facing unemployment in Oklahoma and was offered a position in Louisiana. This job was the primary reason for the move, and because the move was neither intended to harm the father's relationship with the child nor deprive him of visitation, it was deemed in good faith.

¶12 Similarly here, Mother's decision to move was based on an employment opportunity and financial considerations. In Scocos, there was evidence to suggest that one of factors motivating the mother's move was the pursuit of a love interest, and the move was still deemed in good faith.[16] In the present case, conversely, Mother's job opportunity was the only motivating factor. In no way was the move intended to harm Father's relationship with the child or deprive him of visitation. There is no hint that Mother attempted to take any "unconscientious advantage" of Father. In deciding otherwise, the Court of Civil Appeals focused on the facts that Mother had not previously told Father that she was applying for jobs that would require relocation, and that she accepted the position only days after Father was aware of the interview. Mother, however, had no duty to inform her former husband that she was applying for other jobs, and the fact that she informed him of the interview demonstrates her good faith attempts at communication that were not required. In Scocos, supra, the father was not informed of the plan to relocate until after the position had already been accepted. Furthermore, the mother there did not inform the father that "a move might be imminent" during negotiations of the joint custody agreement.[17] If that does not constitute bad faith, then accepting the position days after Father was aware of the interview does not either.

¶13 In custody issues, the best interest of the child is a "paramount consideration."[18] Title 43 O.S. 2011 §112.3 (J) directs courts to consider the following factors regarding a proposed relocation:

a. the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life,

b. the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child,

c. the feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties,

d. the child's preference, taking into consideration the age and maturity of the child,

e. whether there is an established pattern of conduct of the person seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating person,

f. whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity,

g. the reasons of each person for seeking or opposing the relocation, and

h. any other factor affecting the best interest of the child.[19]

 

¶14 Employment opportunities and financial considerations are legitimate reasons to seek relocation. If either a sole custodian or primary physical custodian seeks to relocate with a child based on a legitimate job opportunity or job transfer, courts should be reluctant to interfere. Of course such a determination is not absolute and should be weighed together with other evidence relating to the proposed relocation. If upon modification, Mother is appointed as the primary physical custodian, the burden under 43 O.S. § 112.3 would shift to Father to demonstrate the proposed relocation is not in the best interests of the child. Should the court award Father primary physical custody of the child, the relocation issue would become moot.

 

II.

THE TRIAL COURT DID NOT ERR IN DIRECTING THAT EACH
PARTY PAY THEIR OWN ATTORNEY FEES.

¶15 In a separate companion case, Mother argues that the trial court erred because it "summarily addressed" the awarding of fees from the bench without holding a Burk hearing. State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, ¶ 3, 598 P.2d 659 involved the "equitable fund doctrine," which posits that attorneys who succeed in creating or preserving a fund though litigation have a right to receive fees paid from the fund. It set out criteria to help judges determine the reasonableness of attorney fees.[20] Mother culled a line from the opinion which stated that "the trial court should set forth with specificity the facts, and computation to support his award,"[21] and seems to argue that anytime a judge does not make findings on the record regarding hours spent and reasonable hourly rates in a "Burk hearing," reversal is warranted.

¶16 The reasonableness of attorney fees rests with the discretion of the trial court, and its decision is subject to an abuse of discretion standard.[22] Under this standard, a trial court will not be reversed unless it made a clearly erroneous conclusion against reason and evidence.[23] The rule that "each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties" is "firmly established in this jurisdiction."[24] Mother points to 43 O.S. 2011 §110 (D) and (E) as authorizing fees in this case. These sections provide:

D. Upon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.

E. The court may in its discretion make additional orders relative to the expenses of any such subsequent actions, including but not limited to writs of habeas corpus, brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final orders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.

¶17 In matrimonial litigation, a party should be awarded attorney fees only if they qualify for the benefit through a judicial balancing of the equities considering the means and property of each party.[25] At her position, Mother earns a base salary of $115,000 per year, with a discretionary annual bonus of 15%, while Father earns $62,000 per year. A balancing of the equities considering the means of each party does not qualify Mother for attorney fees because a disparity in the respective incomes of the parties is a factor that may be taken into account.[26] The trial court's order that each party pay their own fees was not a clearly erroneous conclusion against reason and evidence. Accordingly, the trial court did not abuse its discretion and its decision regarding attorney fees is affirmed.

CONCLUSION

¶18 The use of the phrase "[t]he person entitled to custody" in 43 O.S. 2011 §112.3(G)(1)[27] indicates that a single individual alone is permitted to relocate a minor child. Because neither Mother nor Father is the primary physical custodian, neither can invoke the relocation provisions until designated as the primary physical custodian. Accordingly, we remand the cause for the trial court to hold a hearing within 30 days of the date that this opinion is filed to appoint a primary physical custodian of the parties' minor child.

¶19 Additionally, "[w]here the burden of proof lies on a given issue is, of course, rarely without consequence and frequently may be dispositive to the outcome of the litigation."[28] The Legislature has expressly allocated specific burdens of proof in child relocation cases that must be followed. The parent seeking relocation has the burden of demonstrating that the proposed relocation was made in good faith.[29] If successful, then the burden shifts, and the parent objecting to relocation must show that the proposed relocation is not in the child's best interest.[30] If it is determined that Mother is the primary physical custodian, the proposed relocation was made in good faith and therefore the burden should shift to Father to demonstrate that the proposed relocation was not in the best interest of the child. If the trial court awards Father primary physical custody of the child, the relocation issue becomes moot.

¶20 Finally, the trial court did not abuse its discretion by ordering that each party pay their own attorney fees. The disparate income levels of the parties demonstrate that Mother is not entitled to fees after a judicial balancing of the equities. The trial court's order regarding attorney fees is affirmed.

COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART AND
REMANDED WITH INSTRUCTIONS.

COMBS, C.J., GURICH, V.C.J., KAUGER, WINCHESTER, EDMONDSON, WYRICK, JJ., concur.

WATT, J., concurs in part/dissents in part.

COLBERT, REIF, JJ., not participating. 

FOOTNOTES

[1] Case Number 113,857.

[2] In spite of the fact the parties stipulated on the record that they shared equal time with their daughter, the divorce decree included an attached standard visitation schedule.

[3] Additionally, Mother filed a motion requesting modification of the parties' joint custody plan.

[4] Title 43 O.S. 2011 112.2a provides:

A parent entitled to the custody of a child has a right to change his residence, subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child.

[5] Kaiser v. Kaiser, 2001 OK 30, ¶ 18, 23 P.3d 278.

[6] Mahmoodjanloo v. Mahmoodjanloo, 2007 OK 32, ¶ 8, 160 P.3d 951.

[7] Scocos v. Scocos, 2016 OK 36, ¶ 2, 369 P.3d 1068.

[8] Title 43 O.S. 2011 §109.

[9] See Scocos v. Scocos, see note 7 at ¶ 6, supra.

[10] Scocos v. Scocos, see note 7 at ¶ 6, supra.

[11] Scocos v. Scocos, see note 7 at ¶ 6, supra.

[12] Mahmoodjanloo v. Mahmoodjanloo, see note 6 at ¶ 7.

[13] See Title 43 O.S. 2011 §112.3(K), see ¶8, supra.

[14] Title 25 O.S. 2011 §9 provides:

Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.

[15] Scocos v. Scocos, see note 7 at ¶ 11, supra.

[16] Scocos v. Scocos, see note 7 at ¶ 11, supra.

[17] Scocos v. Scocos, see note 7 at ¶ 9-10, supra.

[18] Scocos v. Scocos, see note 7 at ¶ 5, supra.

[19] Factor (a) considers the nature of the child's relationship with each parent and other family members. Here, the child has spent roughly half her time with each parent and has become close with each of her new siblings, but would have more extended family members in Oklahoma. Father's parents, sibling, and niece all live relatively close by, while there would be no extended family members in Georgia. In regards to factor (b), the impact of the relocation on the child's physical, educational, and emotional development, both parties agree that the child is intelligent and well-adjusted, with no special needs or developmental issues. Factor (c) addresses the feasibility of preserving the relationship between the child and the nonrelocating parent. This Court has "never held that child preference is 'the' deciding factor when determining custody or modifying custody. Rather, it is merely one of many factors which the trial court is required to consider." Title 43 O.S. 2011 §113(C) provides that "[t]here shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference." Here, the child will be twelve on September 21, 2017, and is consequently around the age to express her opinion on the matter. Factor (e) involves whether the relocating parent has attempted to promote or thwart the relationship of the child and the nonrelocating person. Mother testified that Father was, and is, a good father, and that she wants the child to have a relationship with him. Father also testified that Mother had accommodatingly changed the visitation schedule in response to Father's changing work schedule to ensure that he and the child had time together. Factor (f) addresses whether the relocation will enhance the quality of life for the child and the parent seeking relocation. Here, Mother's increased salary may enhance the child's life. Finally, in regards to factor (f), the reason for seeking relocation, the sole reason Mother sought to relocate was an attractive employment opportunity.

[20] In re Adoption of Baby Boy A, 2010 OK 39, ¶ 15, 236 P.3d 116.

[21] State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, ¶ 22, 598 P.2d 659.

[22] Childers v. Childers, 2016 OK 95, ¶ 28, 382 P.3d 1020; McCabe v. McCabe, 2003 OK 86, ¶ 13, 78 P.3d 956; Merritt v. Merritt, 2003 OK 68, ¶ 20, 73 P.3d 878.

[23] Broadwater v. Courtney, 1991 OK 39, ¶ 7, 809 P.2d 1310; Abel v. Tisdale, 1980 OK 161, ¶ 20, 619 P.2d 608.

[24] Eagle Bluff, L.L.C. v. Taylor, 2010 OK 47, ¶ 16, 237 P.3d 173 (quoting Kay v. Venezuelan Sun Oil Co., 1991 OK 16, ¶ 5, 806 P.2d 648, 650).

[25] Childers v. Childers, 2016 OK 95, ¶ 29, 382 P.3d 1020, 1027 (citing Thielenhaus v. Thielenhaus, 1995 OK 5, ¶ 19, 890 P.2d 925).

[26] Abbott v. Abbott, 2001 OK 31, ¶ 12, 25 P.3d 291.

[27] See ¶5 , supra.

[28] Lavine v. Milne, 424 U.S. 577, 585 (1976).

[29] Title 43 O.S. 2011 §112.3(K), see ¶1, supra; Scocos v. Scocos, see note 7, supra.

[30] Title 43 O.S. 2011 §112.3(K), see ¶1, supra; Scocos v. Scocos, see note 7, supra.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2012 OK CIV APP 19, 272 P.3d 733, CABER v. DAHLE
Discussed
 2016 OK CIV APP 31, 371 P.3d 1139, IN RE THE MARRIAGE OF KING
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 16, 806 P.2d 648, 62 OBJ 785, Kay v. Venezuelan Sun Oil Co.
Discussed
 1991 OK 39, 809 P.2d 1310, 62 OBJ 1311, Broadwater v. Courtney
Discussed
 2001 OK 30, 23 P.3d 278, 72 OBJ 1479, KAISER v. KAISER
Discussed
 2001 OK 31, 25 P.3d 291, 72 OBJ 1058, ABBOTT v. ABBOTT
Discussed
 1995 OK 5, 890 P.2d 925, 66 OBJ 338, Thielenhaus v. Thielenhaus
Discussed
 2003 OK 68, 73 P.3d 878, MERRITT v. MERRITT
Discussed
 2003 OK 86, 78 P.3d 956, MCCABE v. MCCABE
Discussed
 2007 OK 32, 160 P.3d 951, MAHMOODJANLOO v. MAHMOODJANLOO
Discussed
 2010 OK 39, 236 P.3d 116, IN THE MATTER OF THE ADOPTION OF BABY BOY A
Discussed
 2010 OK 47, 237 P.3d 173, EAGLE BLUFF, L.L.C. v. TAYLOR
Discussed
 2016 OK 36, 369 P.3d 1068, SCOCOS v. SCOCOS
Discussed at Length
 2016 OK 95, 382 P.3d 1020, CHILDERS v. CHILDERS
Discussed at Length
 1979 OK 115, 598 P.2d 659, STATE EX REL. BURK v. CITY OF OKLAHOMA CITY
Discussed at Length
 1980 OK 161, 619 P.2d 608, Abel v. Tisdale
Discussed
Title 25. Definitions and General Provisions
 Cite
Name
Level

 25 O.S. 9, Good Faith Meaning
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 112.3, Relocation Notification of Children
Discussed at Length
 43 O.S. 110, Orders Concerning Property, Children, Support and Expenses
Cited
 43 O.S. 109, Best Interest of Child Considered in Awarding Custody or Appointing Guardian - Joint Custody - Plan - Arbitration
Cited
 43 O.S. 113, Preference of Child Considered in Custody or Visitation Actions
Cited