2010 OK CIV APP 19

Robin L. GALARZA, Petitioner/Appellant,

v.

Louis A. GALARZA, Respondent/Appellee.

No. 106,238.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 2, 2009.

Certiorari Denied Jan. 19, 2010.

Sam George Caporal, Mark W. Hayes, Oklahoma City, OK, for Petitioner/Appellant.

Rita J. Jencks, Jencks Law Firm, P.L.L.C., Edmond, OK, for Respondent/Appellee.

CAROL M. HANSEN, Presiding Judge.

¶1 Petitioner/Appellant, Robin Galarza (Mother), seeks review of the trial court's orders (1) denying her request to relocate the parties' minor child (Child), (2) awarding attorney fees to Respondent/Appellee, Louis Galarza (Father), (3) finding Mother guilty of indirect contempt, and (4) terminating joint custody and awarding sole custody to Father. We affirm, finding the trial court properly applied the law and its orders are not clearly against the weight of the evidence.

¶ 2 The record on appeal begins with a court minute entered on December 2, 2004, granting a divorce to the parties based on incompatibility and reserving all other issues for further hearing. A later order granted Mother temporary full custody of Child. On February 12, 2007, the parties tried the issues of permanent custody and property division. The trial court announced its ruling on March 14, 2007, granting the parties joint custody of Child, with Mother designated as the primary custodian. It directed Father's visitation on alternating weekends would begin after school on Thursdays. The trial court also stated each parent would have the right of first refusal to care for Child when the parent with physical custody was unavailable to attend to Child for a period in excess of four hours.

¶ 3 The trial court also announced its ruling regarding property division. Both parties had federal employee thrift savings plan (TSP) accounts. Father had liquidated his TSP account on August 12, 2003, at which time the balance in the account was $5.400.00. The trial court stated Mother was entitled to half of that amount, or $2,700.00. It noted the evidence established the balance in Mother's TSP account was $14,486.03 as of May 31, 2003, and stated,

I will also invite counsel to establish the value in her account as of August 12, 2003, the same day we're using as a point of reference for [Father] or the nearest date to that day regarding the quantification of the funds in her TSP account. [Father] is awarded one half of that sum less the aforementioned $2700. Such will be paid to [Father] within 90 days of quantification. And, of course, we'll need to have something in a journal entry reflecting this computation. . . .

We will therefore, quantify both accounts as of August 12, 2003, and offset the difference and [Mother] will pay [Father] one half of that balance.

. . . [Mother's attorney] is invited to prepare a journal entry.

¶ 4 Although the record does not contain Mother's notice of relocation of Child, it does contain Father's objection to relocation, filed on April 30, 2007, stating Mother notified him on April 17, 2007 that she planned to relocate with Child to San Antonio, Texas. On June 20, 2007, Father moved to settle the journal entry for the custody and property awards. He also applied for a contempt citation, asserting Mother had not paid him certain portions of the property division, including his share of the TSP account, and had not provided information on the quantification of the account although he had made repeated requests. The trial court issued the contempt citation, directing Mother to appear for arraignment on July 9, 2007. At arraignment, Mother did not appear personally but through her attorney. The trial court bonded Mother on her own recognizance and set trial for September 19, 2007.

¶ 5 On July 31, 2007, the trial court heard the relocation objection. The parties stipulated Mother filed the notice of relocation on April 17, 2007.[1] Mother testified she moved to San Antonio on June 12, 2007 because her husband had obtained a job there after finishing pharmacy school. On cross-examination, Mother acknowledged her husband was offered the job in San Antonio in October 2006, four months before the custody trial, and that he accepted the job on January 12, 2007. She testified:

Q Did you offer to the Court any information about your already planned move to San Antonio?

A No. No, there was no discussion of a move. This was just—

Q Did you agree to joint custody at the trial?

A Yes, I said that was what I wanted, joint custody with me being primary custodian. That's what I wanted.

Q Okay. Did you agree to give extra visitation under that joint custody plan?

A I don't remember specifics but, yes, I suppose so.

Q And so you knew on February 14th, I believe it was that you were moving to San Antonio. Your husband had already signed the contract; is that correct?

---

1. Although the trial transcript indicates the notice was entered into evidence, we do not find it in the record, either as an exhibit or as a court filing.

A Yes, ma'am.

Q But you did not feel that that was necessary to inform this Court about that?

A No, ma'am, I didn't. This was a settlement of property and Sam advised me not to muddle the issues.

¶ 6 The trial court ruled Mother had failed to meet her burden of proving the proposed relocation was in good faith. It reasoned the issues related to joint custody and shared parenting "consumed a majority of our time and efforts in the course of this trial," and the parties' presentations and the trial court's ruling would have been different had Mother "been forthright regarding her intentions to move to San Antonio." The trial court concluded,

> A great deal of previous time of the court and of all concerned was literally wasted during the hearing on the merits of the custody and visitation issues because the petitioner withheld vital information.

> Before the Court at this point in time, is one finite issue, is the proposed relocation of the child made in good faith[.] [T]his is not a close call. The petitioner fails to satisfy her burden of proof that the proposed relocation is in good faith. With all due respect, if this is not bad faith, I don't know what is. Objection sustained. Permission to relocate denied.

The trial court declined to treat Father's objection to relocation as a motion to modify custody. It did not enter an order memorializing its ruling until August 11, 2008.

¶ 7 On September 19, 2007, the trial court heard the contempt citation and motion to settle journal entry. Mother's attorney appeared but she did not. The trial court found Mother in contempt, but declined to issue a bench warrant. The parties settled the journal entry issues and the trial court signed an order memorializing its ruling of March 14, 2007. The journal entry as to custody and property division was filed the next day, September 20, 2007. The trial court's order of contempt, which was not filed until August 11, 2008, found its "ruling of March 14, 2007 was enforceable when entered by the Court on March 14, 2007," and Mother was "guilty of indirect contempt for failing to follow the March 14, 2007 ruling

of the court regarding paying the property division awards within 90 days of the Court's order."

¶ 8 On October 26, 2007, Father moved to modify custody on the grounds Mother had withheld information at the custody trial regarding her intent to relocate, systematically withheld information about Child, regularly interfered with Father's visitation with Child both in person and on the phone, was attempting to alienate Child from Father, and would not communicate with Father about Child. Father requested he be granted sole custody. On July 16, 2008, Mother filed her objection, asserting there had been no permanent, substantial, or material change of condition.

¶ 9 The parties tried the change of custody issues on July 29, 2008. Mother, Father, and Child's counselor testified. The guardian ad litem reported joint custody was not working because communication was ineffective and the parties disagreed regarding Child's school, day care, extracurricular activities, and counseling. She opined both parents were good parents but Mother was emotionally reactive and unable to override her own emotions to do what was in Child's best interests. She pointed to unilateral decisions each parent had made but enumerated several major decisions Mother had made regarding Child without any mention to Father although the parties had joint custody. The guardian ad litem recommended sole custody be given to Father.

¶ 10 The trial court terminated joint custody, finding the joint custody was not working and was not serving Child's bests interests. It awarded sole custody to Father. It entered its order on August 20, 2008.

 ¶ 11 Mother filed her petition in error appealing four orders: Order Settling Journal Entry and Order of Contempt filed August 11, 2008; Order Denying Petitioner's Request to Relocate Minor Child filed August 11, 2008; Order Awarding Attorney Fees, filed August 11, 2008; and Order Modifying Child Custody and Support filed August 20, 2008. The record on appeal does not contain the motion for attorney fees or a transcript of the hearing on the motion. As

the appellant, Mother bears the responsibility of bringing to this court a record upon which we can proceed. *Robbins v. Oklahoma Alcoholic Beverage Control Bd.,* 1969 OK 202, 461 P.2d 610, 613. We may not presume error from a silent record. Absent a record showing otherwise, we must presume the order was responsive to the proof adduced and the trial court did not err. *Hamid v. Sew Original,* 1982 OK 46, 645 P.2d 496, 497. Therefore we will not review the Order Awarding Attorney Fees.

## I

¶ 12 Mother's first six contentions of error challenge the trial court's denial of her request to relocate Child. She argues the trial court erred in (1) denying relocation based on her "intent to move in a prior custody trial," (2) failing to apply 43 O.S.Supp.2009 § 112.2A[2] in conjunction with 43 O.S.Supp. 2002 § 112.3(K)[3], (3) evaluating Mother's good faith based on the time and effort the trial court expended on the case, (4) failing to separate the relocation hearing from the prior custody hearing, (5) failing to treat Father's stipulation that Mother gave proper notice of relocation as determinative on the issue of good faith, and (6) considering evidence of Mother's intent to relocate prior to the date she gave notice of relocation to Father. We will review the trial court's legal rulings de novo, but will not disturb its factual determinations unless they are against the clear weight of the evidence. *Harrison v. Morgan,* 2008 OK CIV APP 68, 191 P.3d 617, 619.

¶ 13 Sections 112.2A and 112.3, construed together, "recognize a preference for allowing the custodial parent [to] place the residence of the children where he or she thinks best." *Id.* at 624. However, the latter statute sets forth a procedure to be followed when the relocation exceeds a distance of 75 miles for a period of 60 days or more.

§ 112.3(A)(5). A person with "the right to establish the principal residence of the child" must notify all those entitled to visitation of a proposed relocation at least 60 days before the date of the intended move. § 112.3(B) and (C).

¶ 14 If a timely objection is filed, the relocating person has the initial burden of showing the proposed relocation is made in good faith. § 112.3(K). Good faith is "an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." 25 O.S.2001 § 9. If good faith is shown, the burden of proof then shifts to the objector to show the proposed move is not in the best interest of the child. 43 O.S.Supp.2002 § 112.3(K).

¶ 15 The trial court properly applied the statutes in deciding this case, requiring Mother to bear the burden of showing the proposed relocation was in good faith. The timeliness of notice of relocation was not determinative of the good faith issue. The appropriate inquiry was whether Mother established she had an honest intention to abstain from taking any unconscientious advantage of Father with regard to Child's custody, even through legal means, and whether she had any information or belief which would render her actions unconscientious.

¶ 16 The trial court's finding Mother did not make her proposed relocation in good faith is supported by her own testimony she entered into a joint custody agreement while withholding information that she intended to move. "A cardinal criterion for an award of joint custody is the agreement of the parties and their mutual ability to cooperate in reaching shared decisions in matters affecting the child's welfare." *Anderson*

---

**2.** 43 O.S.Supp.2009 § 112.2A, formerly codified at 10 O.S.2001 § 19, provides,

> A parent entitled to the custody of a child has a right to change his residence, subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child.

**3.** 43 O.S.Supp.2002 § 112.3(K) provides,

> The relocating person has the burden of proof that the proposed relocation is made in good faith. If that burden of proof is met, the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child.

*v. Anderson,* 1990 OK CIV APP 23, 791 P.2d 116, 117. Under joint custody, both parents are custodial parents within the meaning of § 112.2A, and the right to change Child's residence should be exercised through cooperation in reaching a shared decision.

¶ 17 Father entered into the joint custody agreement and the court approved it, believing Mother intended to conduct herself as a joint custodian and to continue living in Oklahoma County. That Mother knew otherwise and deliberately withheld that information, only revealing her true intent after obtaining Father's agreement and the court's approval, was unconscientious. Accordingly, the trial court did not err in denying Mother's request to relocate Child based on her failure to show good faith.

## II

¶ 18 Mother's next six contentions of error challenge the trial court's order modifying child custody. She contends the trial court erred by applying improper standards for severing joint custody and awarding custody to Father and by implementing the guardian ad litem's recommendation.

¶ 19 The Oklahoma Supreme Court discussed the standard for terminating joint custody in *Daniel v. Daniel,* 2001 OK 117, 42 P.3d 863. In applying 43 O.S.2001 § 109(G),[4] the Court stated,

[A] change in custody from joint to one parent differs from a change in custody from a one custodial parent to a non-custodial parent. Joint custody will not succeed without the cooperation of the parties. When it becomes apparent to the court that joint custody is not working and it is not serving the child's best interests, then a material and substantial change of circumstance has occurred and the joint custody arrangement must be vacated.

*Id.* at 870.

¶ 20 The trial court properly applied this standard below. Its fact finding that joint custody was not working and not serving Child's bests interests was well supported by the testimony of Mother, Father, and the guardian ad litem as to the parties' lack of communication and cooperation regarding Child. In addition, Mother acknowledges in her brief in chief, "The mother and father have never gotten along since the first day the case was filed, and probably never will." Under these circumstances, the trial court did not err in terminating joint custody.

¶ 21 After the trial court terminates joint custody, it must award custody as though no prior custody award had been made. § 109(G). The appropriate standard in making a custody determination is the best interests of the child. *Daniel,* 42 P.3d at 871. We will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Id.*

¶ 22 The trial court's finding the best interests of Child were served by awarding custody to Father is well supported by the record, especially the report of the guardian ad litem. Mother argues the guardian ad litem was biased against her and therefore the trial court should have disregarded her recommendation. Mother was entitled to cross-examine the guardian ad litem for the purpose of eliciting facts to show bias. *Frierson v. Hines,* 1967 OK 60, 426 P.2d 362, 364. She does not assert she sought, but was denied the opportunity to do so. The trial court was entitled to choose which testimony to believe as it has the advantage over this Court in observing the behavior and demeanor of the witnesses. *Mueggenborg v. Walling,* 1992 OK 121, 836 P.2d 112, 114. We find no error.

## III

¶ 23 Mother's last contention is the court erred in issuing a contempt citation when there was no written order filed of

---

4. 43 O.S.2001 § 109(G) provides,
1. The court may terminate a joint custody decree upon the request of one or both of the parents or whenever the court determines said decree is not in the best interests of the child.

2. Upon termination of a joint custody decree, the court shall proceed and issue a modified decree for the care, custody, and control of the child as if no such joint custody decree had been made.

record. The court may enforce an order pertaining to property division in a divorce as an indirect contempt of court if the order is wilfully disobeyed. 43 O.S.2001 § 111. In a divorce action, the adjudication of any issue is enforceable when pronounced by the court. 12 O.S.Supp.2007 § 696.2(E). Therefore, the trial court may find a party in indirect contempt for violation of its order after the decision is pronounced but before the journal entry is filed.

¶ 24 For the foregoing reasons, the trial court's orders are AFFIRMED.

MITCHELL, C.J., and JOPLIN, J., concur.