2013 OK CIV APP 52

**In re the Matter of Athena N. HART, Plaintiff/Appellant,**

v.

**Joseph E. BERTSCH, Defendant/Appellee.**

No. 109,711.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 25, 2013.

Todd Alexander, Tulsa, Oklahoma, for Plaintiff/Appellant.

Joseph E. Bertsch, Tulsa, Oklahoma, Pro Se Appellee.

JOHN F. FISCHER, Presiding Judge.

¶1 Athena N. Hart (Mother), appeals the April 25, 2011, order of the district court denying her request to relocate her minor child and denying her motion to reconsider that order. We find that the district court erred in denying Mother's motion to reconsider and reverse that order. We vacate the April 25, 2011, order denying Mother's request to relocate finding that Mother satisfied her burden of proving that her proposed relocation was being made in good faith and remand for a determination of whether the relocation is the child's best interest.

## BACKGROUND

¶2 At the time of these proceedings, Mother had one child. After three days of trial in May and July of 2009, the district court entered an order of paternity on March 29, 2010, finding that Joseph E. Bertsch (Father) was the biological father of the child and awarding sole custody of the child to Mother. The order also set Father's child support obligation and provided for visitation. On January 28, 2011, Mother notified Father that she intended to relocate with the child to an Air Force base in Delaware where her husband was being transferred. Father filed a timely objection to the proposed relocation. On March 17, 2011, a hearing was held on Father's objection in which the district court found that Mother's proposed relocation was not made in good faith and announced its intention to deny Mother's relocation. Mother filed a motion to reconsider on March 28, 2011. The district court's order denying Mother's request to relocate was filed on April 25, 2011. Mother's motion to reconsider that order was heard on May 24, 2011, and the order denying that motion was filed on July 7, 2011. Mother appeals both the April 25 and July 7 rulings.[1] Our dispo-

---

1. Although represented by counsel at the hearing on his objection, Father appeared *pro se* at the hearing on Mother's motion to reconsider. Father is not represented by counsel and did not file an entry of appearance or answer brief in this appeal despite direction by the Supreme Court to do so on or before May 25, 2012. "Where there is an unexcused failure to file an answer brief, this Court is under no duty to search the record for some theory to sustain the trial court judgment; and where the brief in chief is reasonably supportive of the allegations of error, this Court will ordinarily reverse the appealed judgment with appropriate directions." *Cooper v. Cooper*, 1980 OK 128, ¶6, 616 P.2d 1154, 1156; Oklahoma Supreme Court Rule

sition of this case makes it unnecessary to consider Mother's constitutional challenge to the relocation statutes.

## STANDARD OF REVIEW

¶ 3 This appeal requires review of the district court's interpretation and application of statutes controlling relocation of a minor child. "A legal question involving statutory interpretation is subject to *de novo* review, i.e., a non-deferential, plenary and independent review of the trial court's legal ruling." *Heffron v. Dist. Ct. of Okla. County,* 2003 OK 75, ¶ 15, 77 P.3d 1069, 1076 (citing *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8, n. 5, 33 P.3d 302, 305 n. 5). Mother's motion to reconsider will be treated as a timely filed motion for new trial.

A motion seeking reconsideration, re-examination, rehearing or vacation of a judgment or final order, which is filed within 10 days of the day such decision was rendered, may be regarded as the functional equivalent of a new trial motion, no matter what its title. The meaning and effect of an instrument filed in court depends on its contents and substance rather than on form or title given it by the author.

*Horizons, Inc. v. Keo Leasing Co.,* 1984 OK 24, ¶ 4, 681 P.2d 757, 759. The district court's decision on a motion for new trial is reviewed for an abuse of discretion. *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, ¶ 7, 107 P.3d 595, 600. An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Spencer v. Oklahoma Gas & Elec. Co.,* 2007 OK 76, ¶ 13, 171 P.3d 890, 895.

## ANALYSIS

¶ 4 Two statutes govern the relocation of a minor child by a custodial parent. *See Mahmoodjanloo v. Mahmoodjanloo,* 2007 OK 32, ¶ 2, 160 P.3d 951, 952. The first statute provides:

A parent entitled to the custody of a child has a right to change his residence, subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child.

10 O.S.2001 § 19 (renumbered as 43 O.S.2011 § 112.2A). The second, 43 O.S.2011 § 112.3 (the Relocation Statute), provides in relevant part:

B. 1. Except as otherwise provided by this section, a person who has the right to establish the principal residence of the child shall notify every other person entitled to visitation with the child of a proposed relocation of the child's principal residence as required by this section.

. . . .

G. 1. The person entitled to custody of a child may relocate the principal residence of a child after providing notice as provided by this section unless a parent entitled to notice files a proceeding seeking a temporary or permanent order to prevent the relocation within thirty (30) days after receipt of the notice.

. . . .

2. A parent entitled by court order or written agreement to visitation with a child may file a proceeding objecting to a proposed relocation of the principal residence of a child and seek a temporary or permanent order to prevent the relocation.

. . . .

4. A proceeding filed pursuant to this subsection must be filed within thirty (30) days of receipt of notice of a proposed relocation.

. . . .

K. The relocating person has the burden of proof that the proposed relocation is made in good faith. If that burden of proof is met, the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child.

---

1.10, 12 O.S.2001, ch. 15, app. However, "[r]eversal is never automatic on a party's failure to file an answer brief." *Enochs v. Martin Props., Inc.,* 1997 OK 132, ¶ 6, 954 P.2d 124, 127. If "the record presented fails to support the error alleged in the [appellant's] brief . . . the decision to be reviewed cannot be disturbed. It is presumed correct until the contrary is shown by the record." *Id.*

The first statute gives the custodial parent a "presumptive right" to relocate. *Kaiser v. Kaiser*, 2001 OK 30, ¶ 18, 23 P.3d 278, 282. The second statute requires notice of intent to relocate if the child is to be moved more than seventy-five miles from the child's principal residence for a period of time exceeding sixty days and provides for a hearing procedure if the non-custodial parent objects to relocation. *See Galarza v. Galarza*, 2010 OK CIV APP 19, ¶ 13, 231 P.3d 694, 698.

¶ 5 The dispositive issue in this appeal is whether Mother satisfied her burden of proving that her proposed relocation was being made in good faith as required by section 112.3(K). The factors required to be considered by the district court in determining a contested relocation are specified in section 112.3(J)(1):

a. the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life,

b. the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child,

c. the feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties,

d. the child's preference, taking into consideration the age and maturity of the child,

e. whether there is an established pattern of conduct of the person seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating person,

f. whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity,

g. the reasons of each person for seeking or opposing the relocation, and

h. any other factor affecting the best interest of the child.

"In reaching its decision regarding a proposed relocation, the court shall consider" these factors whether the issue is the custodial parent's good faith in relocating or the best interests of the child. 43 O.S.2011 § 112.3(J)(1).

¶ 6 Mother was the only witness who testified at the hearing on Father's objection to relocation. Her testimony can be summarized as follows: At the time of the hearing, the parties' child was seven years old and in the second grade. Although the March 29, 2010, paternity order granted sole custody of the child to Mother, she had been his custodian and principal caretaker since he was born. The visitation schedule established in the paternity order allocated the child's time between the parties on vacations, holidays and special days, and provided that Father would have regular visitation every other weekend and every Wednesday evening. The relationship between Mother and Father is not good. Since the March 2010 paternity order, Father has taken the child for each of his allocated visitations except one. However, on at least five occasions in the last year Father has not returned the child at the end of his visitation period. On these occasions, Mother sought the help of the police, but when Father refused to turn the child over to the police, Mother was told her only recourse was to consult her attorney and go back to court. Father has not asked for additional visitation. Mother has never denied Father visitation with the child since the child was born.

¶ 7 Mother testified that the reason for the relocation was so that she and her child could be with Mother's husband. Mother testified that it would be in the child's best interest if he did not see his parents fighting all the time, which would be a benefit from less frequent custody exchanges if she moved to Delaware, but that was not the reason she decided to move. The parties' child is currently covered by Mother's husband's military health insurance. Prior to that, they did not have health insurance. Mother married her current husband on October 31,

2010. She had known him for approximately five years before that and they had been living together since approximately December of 2008. They were expecting a child in September 2011. In approximately May of 2010, Mother's husband joined the Air Force. He completed his basic training and received orders assigning him to an Air Force base in Delaware, where he would be stationed for six years, except for possible occasional deployments elsewhere. If husband were deployed, it would be for no more than ninety days at a time, and Mother would continue to live in Air Force housing while he was away. Mother testified that, if her husband is deployed, she would be willing to bring the child back for visits with Father as long as it does not interrupt the child's school or activities.

¶ 8 Mother testified that in Delaware she and her husband would be provided newly constructed housing with three bedrooms and two bathrooms. Currently, Mother lived in a small house in a neighborhood that was "not very good." The child had his own room but that house would not be large enough for the family once the baby was born in September. Mother had been employed as a veterinary assistant but recently resigned in order to prepare for the move to Delaware. She stated she has job opportunities with veterinary clinics in Delaware and also with the school the child would attend. It would be a significant financial burden on her family if she remained in Oklahoma because they would have two homes instead of one, and her husband's housing allowance from the Air Force was not large enough to cover both. Consequently, they would have less money if she were to remain in Oklahoma. Although neither party has relatives who live in Delaware, Mother testified that her mother would move with her, and other members of Mother's family had already made plans to visit. Mother testified that the child has a good relationship with her husband.

¶ 9 Mother's husband received his orders on January 25, 2011, to report to the base in Delaware by March 14, 2011. That date was moved forward to April 6. Mother notified Father of the March 14 relocation date on January 28, 2011. She also notified him of the April date and complied with all the notice provisions of the paternity order in doing so. Mother proposed a new visitation schedule to Father whereby he would have visitation one weekend every three months, every, or every other spring break, every other Christmas, six weeks during the summer and "any other times they could agree on."

¶ 10 At the conclusion of the hearing on Mother's motion for new trial, the district court stated that it had considered all of the statutory factors but did not intend to articulate the evidence relevant to each category. The court did state that it was concerned about the feasibility of preserving the relationship between Father and the child. However, the dispositive factor to the district court at that hearing, as it was at the hearing on Father's objection to relocation was the court's conclusion that Mother had failed to meet her burden of proving that her decision to relocate the child was made in good faith.

¶ 11 We recognize that the district court's statements in announcing its ruling on Father's objection do not constitute findings of fact and cannot alter the written statements contained in its order. *Hedges v. Hedges*, 2002 OK 92, ¶ 17, 66 P.3d 364, 371. Nonetheless, the April 25, 2011, order states that the district court "does not find that the [Mother's] decision to move was made in good faith." We find the court's statements at the hearing on Father's objection insightful with respect to that finding. The district court observed that one cannot choose who one falls in love with, and that Mother's decision to move with her husband "may have absolutely been made in good faith." However, the district court stated that there was insufficient evidence to show that Mother's decision to move her child with them was also made in good faith. The district court focused on Mother's choice to marry a man in the Air Force with "pretty firm knowledge" that, "in all probability," he would be stationed somewhere other than Mother's and Father's home town. The court stated that Mother's decision "to marry someone who you knew was going to be forced to relocate weighs very, very heavily on me as

far as whether this whole thing is done in good faith."

¶ 12 Prior to the enactment of the Relocation Statute, the custodial parent had a "presumptive right" to change the residence of a minor child pursuant to 43 O.S.2011 § 112.2A. *Kaiser v. Kaiser*, 2001 OK 30, ¶ 33, 23 P.3d 278, 286. In cases decided solely pursuant to section 112.2A, the Supreme Court has consistently found that the custodial parent may relocate a child beyond the borders of this State if the evidence establishes the fitness of the custodial parent and that "the child will [not] be placed at risk of specific and real harm by reason of living with the custodial parent in the new location." *Id.* (reversing the district court's refusal to permit the custodial mother of a two year old child to relocate to Washington, D.C. to accept a better employment opportunity). *See also, Abbott v. Abbott*, 2001 OK 31, 25 P.3d 291 (permitting the custodial mother of an eight-year-old child to relocate to accept a position on the Dental Faculty at the University of Michigan after her graduation from dental school in Oklahoma); *Casey v. Casey*, 2002 OK 70, 58 P.3d 763 (permitting the custodial mother of eleven and thirteen-year-old children to relocate to Indiana to accept a job with a forty-two percent pay increase), and *Mahmoodjanloo v. Mahmoodjanloo*, 2007 OK 32, 160 P.3d 951 (affirming the district court's determination that the custodial father of thirteen and fourteen-year-old children had met his burden of showing that his proposed move to New York where his new wife was employed was made in good faith).

¶ 13 As the Court noted in *Mahmoodjanloo,* the Relocation Statute altered certain aspects of the rule announced in *Kaiser v. Kaiser* regarding who has the burden of proof and the level of proof required in relocation cases, and specifies the factors that must be considered by the district court in making relocation decisions. *Id.* ¶¶ 6–7, 160 P.3d at 953–54. However, we agree with the holding expressed by this Court in *Harrison v. Morgan*, 2008 OK CIV APP 68, ¶ 15, 191 P.3d 617, 621: "We have reviewed § 112.3 and find nothing in that statute indicating the Legislature's intent to expressly repeal

§ [112.2A]." That holding is certainly consistent with, if not required by, *Mahmoodjanloo:* "The right of a custodial parent to relocate to a distant new home with his or her child when that move is opposed by the noncustodial parent is governed by two different statutes: 10 O.S.2001 § 19 and 43 O.S. Supp.2002 § 112.3." *Mahmoodjanloo*, 2007 OK 32, ¶ 2, 160 P.3d at 952. *Accord, Plumlee v. Plumlee*, 2012 OK CIV APP 10, 271 P.3d 807. Consequently, we find the Supreme Court's pre-Relocation Statute decisions interpreting a custodial parent's right to relocate minor children in another state pursuant to section 112.2A to be controlling with respect to the issue of the burden of proving good faith pursuant to section 112.3K.

¶ 14 As to that issue, Mother testified that she was moving to be with her husband who had been transferred to Delaware by the Air Force. The evidence shows that the child and Mother's husband have a good relationship, that they live together with Mother as a family, a family that will expand with the birth of another child. Further, Mother testified that the move would avoid the financial hardship of maintaining two households if she stayed in Oklahoma and provided evidence regarding the extent of that potential hardship. She testified that she would be living in a new three bedroom house in the Air Force housing division rather than an old house in a poor neighborhood that was going to be too small once her baby was born. She testified that she had employment opportunities in Delaware including at the grade school her son would be attending. That school was also located in the Air Force base housing division near swimming pools and youth centers. In addition, the child's maternal grandmother will be moving with them to Delaware.

¶ 15 Although it is certainly possible that a custodial parent could contrive a marriage to move out of this State in order to deprive the non-custodial parent of significant visitation, we find no facts in this record to suggest that was Mother's intent. Mother and her husband had known each other for five years and had been living together for one year and a half before her husband joined the Air Force in May of 2010. It may have been

probable that husband would be transferred out of Oklahoma when they married in October of 2010; however, there is no evidence in this record showing their decision to marry was made to deprive Father of visitation with his son.

¶ 16 The district court articulated three other facts supporting its determination that Mother's intent to relocate was not made in good faith: (1) Mother's consideration of "the way that [Father] handled visitation returns;" (2) the fact that Mother proposed to move the child in the middle of the school semester; and (3) the fact that Mother thought it was in the child's best interest to only see his Father one weekend every three months. Mother's testimony regarding the extent to which her confrontational relationship with Father at the end of his visitation periods was a factor in her decision to move is at best, confusing and at worst, conflicting. Mother initially testified on this point on direct examination, and it was revisited at length on cross-examination. Certainly, this Court does not have the advantage the district court had observing Mother's demeanor during this testimony. Unlike the district court, however, we do have the advantage of the transcript of that testimony. And a fair reading of that transcript shows that Mother made her decision to move in order to be with her husband and to provide a stable family environment for her son under better financial circumstances. A benefit of that decision would be less frequent visitation exchanges with Father and, therefore, fewer occasions on which Mother and Father would be fighting in front of their child. After her initial testimony that could be interpreted as suggesting otherwise, Mother's testimony was consistent with this interpretation, despite rigorous cross-examination.

¶ 17 As to the second point, we note that the proposed relocation would have occurred with approximately two months left in the semester, and that by the time of the hearing on Mother's motion to reconsider the child's second grade year was essentially over. With regard to the effect of the move on Father's visitation, we find the following instructive.

The fact that father's visitation would be altered by the mother's relocation is understandably difficult and upsetting for him, but maintaining his existing visitation schedule did not justify the trial court's order restricting mother's ability to leave Oklahoma to pursue her career opportunity and attempt to find better life for herself and [her child]. The cases uniformly hold that visitation rights alone are an insufficient basis on which to deny relocation and thereby change custody of a child. A custodial parent's relocation should not be disallowed solely to "maintain the existing visitation patterns."

*Kaiser v. Kaiser,* 2001 OK 30, ¶ 29, 23 P.3d 278, 286 (citation omitted).

■ ¶ 18 We find that Mother met her burden of proving that her relocation to Delaware was being made in good faith. Therefore, the burden of proof shifts to Father to prove that the move will not be in the best interests of the child, with evidence addressing the factors set forth in paragraph J(1) of section 112.3. Because of the district court's ruling, Father did not have that opportunity. Consequently, this case must be remanded for a determination of the issue on which Father has the burden of proof pursuant to section 112.3(K): "the proposed location is not in the best interest of the child."

## CONCLUSION

¶ 19 The district court erred in finding that Mother failed to meet her burden of proving that her proposed relocation of her minor son to Delaware was being made in good faith. Consequently, Mother's motion to reconsider should have been granted. The order denying Mother's motion to reconsider is reversed and the April 25, 2011, order denying Mother's request to relocate is vacated. This case is remanded for a hearing on the issue of whether Mother's proposed relocation is in the best interest of the child pursuant to section 112.3 and 112.2A of Title 43.

¶ 20 **REVERSED IN PART, VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS AS DIRECTED.**

BARNES, V.C.J., and WISEMAN, J., concur.