2016 OK CIV .APP 31

In re the MARRIAGE OF Andrea Nicole KING, Petitioner/Appellee,

and

**Daniel Zebulon King,**
**Respondent/Appellant.**

**No. 113,628.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

Nov. 25, 2015.

Richard O'Carroll, Sharisse O'Carroll, O'Carroll & O'Carroll, Tulsa, Oklahoma, for Petitioner/Appellee.

P. Gae Widdows, Blake Feamster, Widdows Law Firm, P.C., Tulsa, Oklahoma, for Respondent/Appellant.

BRIAN JACK GOREE, Presiding Judge.

¶ 1 This is an appeal of a trial court's order granting a custodial parent's request to relocate the parties' minor children from Oklahoma to Texas. The order is affirmed. It was neither contrary to law nor against the clear weight of the evidence.

¶ 2 Andrea Nicole King, now Gage, (Mother) and Daniel Zebulon King (Father) were married in 2005. They divorced in 2011 and the court awarded them joint custody of their two minor boys. Mother began training for a career as an ultrasound technician and she was offered a job in Wyoming. In 2012, she served a notice to relocate to Wyoming with her children. Father objected, and Mother withdrew her request after the job did not materialize.

¶ 3 The next year, Mother served another notice of relocation. This time she proposed to move with the children to Stephenville, Texas to work at the hospital where her parents are both employed. Father objected again and the court denied Mother's request. The trial court concluded that the relocation statute is not applicable in cases of joint custody.

¶ 4 Later that year both parties filed motions to modify custody. The court observed that the parties were unable to communicate or set aside their differences. The judge terminated joint custody and awarded sole custody to Mother. Several weeks passed and Mother served another notice to relocate to Stephenville. After a three-day trial the

court granted Mother's request. Father filed this appeal.

## I.

¶ 5 The interpretation and application of the relocation statutes are subject to *de novo* review. *Hart v. Bertsch*, 2013 OK CIV APP 52, ¶ 3, 306 P.3d 585, 587. An appellate court must affirm the trial court's determinations of the relocating parent's good faith and the children's best interests unless they were contrary to law or against the clear weight of the evidence. *Galarza v. Galarza*, 2010 OK CIV APP 19, ¶ 12, 231 P.3d 694, 698; *Harrison v. Morgan*, 2008 OK CIV APP 68, ¶ 30, 191 P.3d 617, 625.

## II.

¶ 6 Father argues that the trial court should have denied relocation because Mother abused the system by circumventing the requirements of the relocation statute. He contends that Mother's third proposed relocation was in bad faith, as evidenced by the two previous relocation notices which she filed when she and Father had joint custody of the children.

¶ 7 It is Father's position that the relocation statute prohibits a parent from relocating a child's residence while the parents share joint custody. Because we disagree with Father's premise, we hold the trial court committed no error in granting the relocation over Father's abuse-of-the-system allegation.

¶ 8 We examine the language of two statutes to determine whether a parent with joint custody may initiate relocation of a child. According to 43 O.S. 2011 § 112.2A, "a parent entitled to the custody of a child" has a right to change his residence. That right is subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child. *Id.*

Mother is "a parent" and there is nothing unclear or ambiguous about § 112.2A.

¶ 9 The procedure for a parent to change a child's residence is outlined at 43 O.S. 2011 § 112.3. Subparagraph G provides: *"The person entitled to custody of a child* may relocate the principal residence of a child after providing notice as provided by this section unless a parent entitled to notice files a proceeding seeking a temporary or permanent order to prevent the relocation within thirty (30) days after receipt of the notice." § 112.3(G)(1) (emphasis added). Section 112.3 includes definitions. "A 'person entitled to custody of or visitation with a child' means a person so entitled by virtue of a court order or by an express agreement that is subject to court enforcement." § 112.3(A)(3).

¶ 10 Pursuant to the definition in § 112.3(A)(3), we examine whether Mother was entitled to custody by virtue of a court order. A decree of dissolution of marriage was entered by the court on December 15, 2011. The court found Mother and Father were parents of the two minor children and it awarded joint custody. The decree identified Mother as "the primary care parent." We conclude that Mother was a person entitled to custody by virtue of that court order within the meaning of § 112.3(A)(3). She qualified as "the person entitled to custody" pursuant to § 112.3(G)(1) and was therefore authorized by the statute to provide a notice of relocation to Father.

¶ 11 We hold that when a court orders joint custody, 43 O.S. 2011 § 112.3 permits either parent to initiate the relocation procedure unless the order provides otherwise.[1] Mother did not act in bad faith merely by pursuing relocation while she and Father shared joint custody.

---

1. Two divisions of the Court of Civil Appeals appear to have reached different conclusions on this issue. Division 3 held, "Under joint custody, both parents are custodial parents within the meaning of § 112.2(A)." *Galarza v. Galarza*, 2010 OK CIV APP 19, ¶ 16, 231 P.3d 694, 699. Division 2 stated, "a person with joint custody of a child or temporary custody is not a person entitled to 'the' custody of the child within the meaning of the relocation statute." *Caber v. Dahle*, 2012 OK CIV APP 19, ¶ 30, 272 P.3d 733, 740 [referencing 43 O.S. 2011 § 112.3(G)(1)]. The terms of a custody order governing relocation control over any conflicting provision of the statute. § 112.3(N)(2).

### III.

¶ 12 Father argues that Mother's purpose in relocating was to alienate the children from him. The statute specifies that the relocating person has the burden of proof that the proposed relocation is made in good faith. § 112.3(K). If that burden of proof is met, the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child. *Id.* Father claims Mother did not sustain her burden to prove her proposal to relocate the children to Stephenville was made in good faith.

¶ 13 Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious. 25 O.S. 2011 § 9.

¶ 14 Mother presented evidence that she sought to relocate to Texas to pursue a job opportunity. The prospective job had a slightly lower wage rate than her current part time job, but it was full time and included health insurance benefits. She was invited to live without cost in a house provided by her relatives. She testified her living expenses would be reduced by more than $1,000 per month. She also presented evidence that Stephenville is a desirable community with many opportunities for the children to enjoy sports and other activities they enjoy.

¶ 15 Father argued that relocating was in reality another step in Mother's patterned strategy to separate him from his boys. He pointed to several examples: Mother failed to give him the schedules for the children's extracurricular activities and then criticized him for not attending them; Mother scheduled the children for excessive activities that naturally diminished Father's visitation time; Mother prevented Father from accessing the children's school or medical records; Mother failed to identify Father as an emergency contact on school, daycare, and medical forms; and Mother proposed a substantial decrease of Father's visitation.

¶ 16 The trial transcripts bear out the court's earlier finding that the parties have difficulty communicating and setting aside their differences. However, the clear weight of the evidence does not support Father's claim that Mother's proposed move was designed to thwart his relationship with their children. We hold that Mother's testimony concerning her motivation, purpose, and intent for relocating with the children to Stephenville, Texas supports a finding of good faith.

### IV.

¶ 17 After Mother presented sufficient proof that she proposed the children's relocation in good faith, the burden shifted to Father to show relocation would not be in their best interest. § 112.3(K). In reaching its decision regarding a proposed relocation, the court shall consider the factors set forth at § 112.3(J)(1), as well as any other factor affecting the best interest of the child. § 112.3(J)(1)(h).[2]

---

2. Section 112.3(J) provides:

J. 1. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
1. a. the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life,
b. the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child,
c. the feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties,
d. the child's preference, taking into consideration the age and maturity of the child,
e. whether there is an established pattern of conduct of the person seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating person,
f. whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity,
g. the reasons of each person for seeking or opposing the relocation, and
h. any other factor affecting the best interest of the child.
2. The court may not:

¶ 18 Father challenges the form of the court's order. He suggests the order should be reversed because it does not contain a written evaluation that analyzes each of the eight subsections of the statute. This is required, explains Father, according to *Harrison v. Morgan*, 2008 OK CIV APP 68, 191 P.3d 617. In *Harrison*, the Court of Civil Appeals stated, "when applying the best interest test under § 112.3(J)(1)(a)–(h), the trial court is to consider and weigh all the evidence, if any, relevant to the specific topic for each factor and decide whether each factor weighs either 'in favor of relocation,' 'against relocation,' or is neutral." *Harrison*, ¶ 27.

¶ 19 The issue in *Harrison* was the sufficiency of the evidence to support the trial court's determination, not the form of the order. No language in § 112.3 requires trial courts to make express written findings. The court's decision is presumed to include a finding favorable to the successful party upon every fact necessary to support it. *Carpenter v. Carpenter*, 1982 OK 38, ¶ 10, 645 P.2d 476, 480.[3]

### V.

¶ 20 Father also challenges the validity of the notice of relocation served upon him by Mother. The person entitled to custody of a child may relocate the child after providing statutory notice, unless the parent who is entitled to notice files, within 30 days, a proceeding seeking to prevent the relocation. 43 O.S. 2011 § 112.3(G). Father argues he did not receive the notice required by statute. He claims the trial court should have granted his motion to dismiss. Mother counters that Father not only had actual notice of the proceeding, but he exercised his rights by filing a timely objection, and therefore he was not prejudiced. Mother is correct.

¶ 21 The statute in question is 43 O.S. 2011 § 112.3(C)(2). It lists the following items of information that must be given, if available, with the notice of intended relocation of the child: (a) the intended new residence, including the specific address, if known; (b) the mailing address, if not the same; (c) the home telephone number, if known; (d) the date of the intended move or proposed relocation; (e) a brief statement of the specific reasons for the proposed relocation of a child, if applicable; (f) a proposal for a revised schedule of visitation with the child, if any, and (g) a warning to the non-relocating parent that an objection to the relocation must be made within thirty (30) days or the relocation will be permitted.

¶ 22 Mother did not provide Father with the subsection (g) warning language. She did not inform Father in writing that he had to make an objection within 30 days to avoid an order permitting the relocation. Despite the omission, Father filed a timely objection and fully litigated it. Courts must disregard defects in pleadings or proceedings which do not affect the substantial rights of the adverse party. 12 O.S. 2011 § 78. The trial court correctly denied Father's motion to dismiss challenging the sufficiency of Mother's notice.

### VI.

¶ 23 Father asserts error based on two of the trial court's pretrial discovery rulings. Father filed a motion requesting the court to order Mother to submit to an examination by Morey J. Villareal pursuant to 12 O.S. 2011 § 3235. The requested examination was for

---

a. give undue weight to the temporary relocation as a factor in reaching its final decision, if the court has issued a temporary order authorizing a party seeking to relocate a child to move before final judgment is issued, or

b. consider whether the person seeking relocation of the child has declared that he or she will not relocate if relocation of the child is denied.

3. The appealed order was filed January 8, 2015 and appears to have been prepared by one of the parties, as directed by the trial court. The order does not include any rationale for the court's determination that relocation should be granted. It did not include findings that Mother's request was in good faith or that relocation would be in the best interest of the children. However, the appealed order was preceded by a detailed written Decision filed by the court on November 19, 2014. The Decision appears to have been prepared by the trial judge. It contains numerous citations to the relevant statutes and case law. It includes headings pertaining to each of the § 112.3(J)(1) factors followed by specific findings that are supported by the parties' trial testimony.

vocational and occupational testing. Father desired Mr. Villareal to determine the employability of Mother. The trial court denied the motion.

¶ 24 Section 3235(B) of the Oklahoma Discovery Code provides a procedure for a party to take the physical or mental examination of another party. Such an examination may be permitted when a party relies upon his or her physical or mental condition as an element of a claim or defense. § 3235(A). Vocational or occupational testing is not within the meaning of physical or mental examination pursuant to § 3235 and the trial court correctly denied the motion.

■ ¶ 25 Mother's ability to obtain employment as an ultrasound technician in Oklahoma, and the adequacy of her job search, were relevant questions. Father was not precluded from conducting statutory discovery by means other than a § 3235 examination.[4]

¶ 26 Father also filed a motion requesting the court to order the parties and the minor children to submit to an evaluation by Laura E. Fisher, Ph.D. Father proposed that Dr. Fisher should prepare a report to the court regarding the issues of custody, visitation, or any mental health issues. The motion cited no legal authority but Father's appellate brief asserts the motion was made pursuant to 12 O.S. 2011 § 3235. The trial court denied the motion.

■ ¶ 27 None of the parties relied on a claim or defense calling into question the mental health of the parents or the children and therefore § 3235 was inapplicable. The court appointed Daniel Giraldi to serve as guardian ad litem. Mr. Giraldi was authorized to interview the children, obtain necessary information, and to petition the court for appointment of a mental health professional if necessary. Mr. Giraldi filed a written report in the case, he appeared on behalf of the children at the trial, he cross-examined Mother, and he offered testimony concerning his recommendations to the court. Father

and Mother were given the opportunity to cross-examine Mr. Giraldi but they declined.

■ ¶ 28 The guardian ad litem thoroughly addressed all issues that Father proposed should be evaluated by Dr. Fisher. The trial court did not abuse its discretion in denying Father's motion for a child custody evaluation.

### VII.

■ ¶ 29 Father asserts the trial court was without authority to extend the parties' statutory time to file a motion for attorney fees. The appealable order, filed January 8, 2015, states, "fees and costs are hereby reserved and may be addressed by application filed as late as 60 days from the date of this ruling." Father filed an application for attorney fees and costs within 30 days of the date of the order. Mother did not file an application for fees and costs.

■ ¶ 30 Generally, an application for attorney fees or costs must be filed within thirty days after the filing of the judgment, decree or appealable order. 12 O.S. Supp. 2012 § 696.4. Father does not contend that the trial court's *sua sponte* extension of the statutory period has prejudiced him. One who is not aggrieved by a court's decision may not bring an appeal from it. *Cleary Petroleum Corp. v. Harrison*, 1980 OK 188, 621 P.2d 528, 530. We decline to review this assignment of error.

¶ 31 The trial court's Order is AFFIRMED.

BUETTNER, J., concurs.

BELL, J., dissents with opinion.

¶ 32 There is a pattern to the actions of the mother. She wants to create a barricade in between the father and the child. The evidence and the history of her multiple attempts to erode the relationship of the father and the child is clear. I cannot agree with the majority that she acted in good faith. If she feels the need to move to Texas, she can, just not with the child. If she feels that it is

---

4. Father called Mr. Villareal as a witness at trial. The court heard evidence supporting Father's defense that Mother could have found local employment as a sonographer and therefore her proposal to move to Texas was not genuinely related to employment but was in bad faith.

not a hardship on the father to travel intrastate to visit his child, she should allow the father to continue to have custody. She can come back to Oklahoma to visit the child. This decision is not in the best interest of the child.